WHITNEY (BENTON v.). See Case No. 1,335.

WHITNEY (BLANCHARD v.). See Case No. 1,519.

## Case No. 17,583.

### WHITNEY v. CARTER.

[Fess. Pat. 130.]

Circuit Court, D. Georgia. 1810.

PATENTS—WHAT IS PATENTABLE—EFFECT OF IMPROVEMENTS—WHITNEY COTTON GIN.

[1. A patent is not grantable for a principle merely, but only for an application of a prin-

-ciple, whether previously known or not, to some new and useful purpose.]

[2. To defeat a patent an alleged concealment of a part of the invention must appear to have been made, for the purpose of deceiving the public, and a mere error of judgment, at the time of applying for the patent, in determining what was the best form to be given to a particular feature of the machine, will not have that effect.]

[3. The Whitney patent for a cotton gin discloses an extremely useful and novel invention, and is valid.]

At a circuit court of the United States for the district of Georgia was tried the case of Eli Whitney v. Isaiah Carter, for infringing a right vested by patent for a new and useful improvement in the mode of ginning cotton. The plaintiff supported his declaration by proving the patent, model, and specification, and proving the use of the machine in question by the defendant. He also introduced the testimony of several witnesses, residing in New Haven, to prove the origin and progress of his invention. The defendant rested his defence on two grounds —First, that the machine was not originally invented by Whitney; second, that the specification does not contain the whole truth relative to the discovery.

General Mitchel, of counsel for the defendant, produced a model, which was intended to represent a machine used in Great Britain for cleaning cotton, denominated the "Teazer" or "Devil." A witness was produced who testified that he had seen in England, about seventeen years ago, a machine for separating cotton from the seed which resembled, in principle, the model now exhibited by the defendant. Another witness testified that he had seen a machine in Ireland, upon the same principle, which was used for separating the motes from the cotton, before going to the carding machine. By the machine, of which a model was exhibited, the cotton is applied, in the first instance, to the rollers, made of iron, revolving inversely. By these rollers the fibres are separated from the seeds, and protracted within the sweep of certain straight pieces of wire, revolving on a cylinder, which tear and loosen the cotton as they revolve. It was contended by the defendant's counsel that this model conforms in principle to Mr. Whitney's machine; and that the evidence given in support of it established the presumption that he must have derived the plan of his machine from a similar one, used in the manufactures in Great Britain.

In support of the second ground of defence, evidence was produced to show that Mr. Whitney now uses, and that the defendant also uses, teeth formed of circular plates, instead of teeth made of wire. And it was contended that this was a departure from the specification, and an improvement on the original discovery, which destroys the merit of that discovery and the validity of the plaintiff's patent. It was also contended that the plaintiff had concealed the best means of producing the effect contemplated.

Mr. Noel, of counsel for the plaintiff, in opposition to the first ground of defence, stated two points: (1) That if the principle be the same, yet the plaintiff's application of the principle, being new, and for a distinct purpose, has all the merit of an original invention. (2) That the principle of Mr. Whitney's machine is entirely different from that exhibited by the defendant. He defined the term "principle," as applied to the mechanic arts, to mean the elements and rudiments of those arts, or, in other words, the first grounds and rule for them. That for a mere principle a patent cannot be obtained. That neither the elements, nor the manner of combining them, nor even the effect produced, can be the subject of a patent; and that it can only be obtained for the application of this effect to some new and useful purpose. To prove this position several examples were stated of important inventions, for which patents had been obtained, which had resulted from principles in common use, and an argument of a celebrated judge at Westminster Hall was cited, in which it was asserted that two thirds or three fourths of all patents granted since the statute passed are for methods of operating and manufacturing, producing no new substances, and employing no new machinery; and he adds in the significant words of Lord Mansfield: "A patent must be for a method detached from all physical existence whatever."

The second point was principally relied on, to wit, that the principle of Mr. Whitney's machine is distinct from that produced by the defendant, and new in its origin. It consists of teeth, or sharp metallic points, of a particular form and shape, and its application is to separate cotton from the seed; whereas, the principle of that model exhibited by the defendant, and of every other machine before invented, and used for the same or a similar purpose, consists of two small rollers, made of wood or iron. In illustration of this point, the plaintiff's counsel cited the following extracts from the opinion of the court, delivered by Judge Johnson, in December term, 1807, in the case of Whitney and others v. Fort,[1] upon a bill of injunction.

"To support the originality of the invention, the complainants have produced a variety of depositions of witnesses, examined under commission, whose examinations expressly prove the origin, progress. and completion of the machine by Whitney, one of the co-partners. Persons who were made privy to his first discovery testify to the several experiments which he made in their pres-

---

[1] [Also cited in Motte v. Bennett. Case No. 9.884; Wilton v. Railroad, Id. 17,857; and Phil. Pat. 416. Nowhere reported; opinion not now accessible.]

ence, before he ventured to expose his invention to the scrutiny of the public eye. But it is not necessary to resort to such testimony to maintain this point. The jealousy of the artist to maintain that reputation which his ingenuity has justly acquired urged him to take unnecessary pains on this subject. There are circumstances within the knowledge of all mankind, which prove the originality of this invention more satisfactorily to the mind than the direct testimony of a host of witnesses. The cotton plant has furnished clothing to mankind before the age of Herodotus. The green seed is a species much more productive than the black, and by nature adapted to a much greater variety of climate; but by reason of the strong adherence of the fibre to the seed, without the aid of some powerful machine for separating it than any formerly known among us, the cultivation of it could never have been made an object. The machine, of which Mr. Whitney claims the invention, so facilitates the preparation of this species for use, that the cultivation of it has suddenly become an object of infinitely greater importance than that of the other species ever can be. Is it then to be imagined that if this machine had been before discovered, the use of it would ever have been lost, or could have been confined to any tract of country left unexplored by commercial enterprise? But it is unnecessary to remark further on this subject. A number of years have elapsed since Mr. Whitney took out a patent, and no one has produced, or pretended to prove the existence of, a machine of similar construction or use."

With regard to the utility of this discovery, the court would deem it a waste of time to dwell long on this topic. Is there a man who hears us who has not experienced its utility? The whole interior of the Southern states was languishing, and its inhabitants emigrating, for want of some objects to engage their attention, and employ their industry, when the invention of this machine at once opened views to them which set the whole country in active motion. From childhood to age, it has presented us a lucrative employment. Individuals who were depressed with poverty, and sunk in idleness, have suddenly risen to wealth and respectability. Our debts have been paid off, our capitals increased, and our lands have trebled in value. We cannot express the weight of obligation which the country owes to this invention; the extent of it cannot now be seen. Some faint presentiment may be formed from the reflection that cotton is rapidly supplanting wool, flax, silk, and even furs, in manufactures, and may one day profitably supply the want of specie in our East-India trade. Our sister states also participate in the benefits of this invention; for, besides affording the raw materials for their manufactories, the bulkiness and quality of the article afford a valuable employment for their shipping.

The second objection relied on by the defendant was "that the specification does not contain the whole truth respecting the discovery." To this it was answered that by the testimony it appears Mr. Whitney, in the original construction of his machine, contemplated each mode of making the teeth, and doubted which mode was best adapted to the purpose. If the alteration, which forms the basis of this objection, has the merit of an improvement, how far does it extend? An improvement, not in the principle, nor in the operation of the machine, but in making one of its component parts, merely in forming the same thing to produce the same effect by means somewhat different. In the case above cited, Judge Johnson remarked on this point as follows: "A Mr. Holmes has cut teeth in plates of iron, and passed them over the cylinder. This is certainly a meritorious improvement in the mechanical process of constructing this machine. But at last, what does it amount to, except a more convenient mode of making the same thing? Every characteristic of Mr. Whitney's machine is preserved. The counsel for Whitney admitted that an improvement in a particular part of the machine would entitle the inventor to a patent for that specific part, but not for the whole machine, as in the case of Boulton v. Bull [2 H. Bl. 463], where a patent was granted for an invention to lessen the quantity of fuel in the use of a certain steam engine." It was decided "that the patent was valid for the improvement, but that it gave no title to the machine itself."

It was also stated that by experiments made on the plaintiff's model, in the face of the court and jury, and by testimony produced, it was apparent no improvement had resulted from this alteration; that no beneficial change, or amendment in the principle had taken place; nor had the effect been aided or facilitated. In the charge of the court to the jury, Judge Stevens remarked that the case cited, Whitney and others v. Fort, was decided without any evidence on the part of the defendant; that, from the testimony now produced, his opinion is that the plaintiff must have received his first impressions from a machine previously in use on a similar principle; and that an improvement had been made as to the teeth, by which the merit of Mr. Whitney's invention was diminished. For these reasons, Judge Stevens had some doubts whether the plaintiff ought to recover. Judge Johnson remarked that, after hearing the evidence which had been relied on by the defendant, he remained content with the opinion which he had given in the case of Whitney against Fort; and that he was also as fully satisfied with the charge he was about to give as any he had delivered. That, as to the origin of this invention, the plaintiff's title remained unimpeached by any evidence which has been adduced in this cause. He agreed with the plaintiff's counsel that the legal title to a patent consists, not in a principle merely, but in an application of a principle, whether previ-

ously in existence or not, to some new and useful purpose. And he was also of opinion that the principle of Mr. Whitney's machine was entirely new, and that it originated with himself, and that it had no resemblance to that of the model exhibited by the defendant.

He considered the defendant's second objection equally unsupported, and referred to the sixth section of the patent laws of the United States, by which it is required that the concealment alleged, in order to defeat the patentee's recovery, must appear to have been made for the purpose of deceiving the public. That Mr. Whitney, in the original formation of this machine, could have no motive for such concealment, and that in making use of wire in preference to any other mode he appears to have acted according to the dictates of his judgment. The error related to a point not affecting the merits of his invention. or the validity of his patent. Verdict for the plaintiff. Damages $1,500.